United States District Court
Southern District of Texas
**ENTERED**
May 05, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FREDRICK BROWN, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-16-00015 |
| § | |
| WYNDHAM HOTEL MANAGEMENT INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

**I.     Background**

This case involves claims under the Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 *et seq.*, and the federal Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* Brown asserts claims under the Texas act for age discrimination and retaliation for complaining about the discrimination and a claim for retaliation under the federal Family Medical Leave Act for taking leave. He does not, however, assert claims under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (Docket Entry No. 14 at ¶¶ 32-45).[1]

Brown worked as the executive chef at a hotel owned and operated by the Intercontinental Hotel Group. Wyndham Hotel Management Inc. acquired the hotel and became Brown's employer.

---

[1] The same legal standards apply to age-discrimination and retaliation claims under the Texas act and the federal Age Discrimination in Employment Act. *See Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991), overruled on other grounds by *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010); *Texas Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 461 (Tex. App.—Austin 2004, no pet.); *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013); *see also Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001) (applying Title VII retaliation standard to retaliation claim under the Texas act). The Texas act is construed to be congruent with federal anti-discrimination laws. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012) ("[O]ne of the purposes of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 . . . ." (quotations omitted)); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (same). An exception, not applicable here, is that the federal age-discrimination statute applies a "but for" causation standard, while the Texas act applies a "motivating factor" standard. *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 219 (5th Cir. 2011).

In this suit, Brown alleges that Wyndham targeted him and other older employees for disparate treatment on the basis of their age and retaliated against him for complaining of the discrimination and for taking medical leave. Although Brown alleged in his charge of discrimination that he was discriminated against on the basis of race in violation of Title VII, his complaint does not assert a Title VII race-discrimination claim.

Brown's motion seeks leave to amend to add a disparate-impact claim to his complaint. Deciding the motion turns on whether Brown exhausted his administrative remedies for the proposed added claim. Before filing this suit, Brown filed a charge against Wyndham with the federal Equal Employment Opportunity Commission and the Texas Workforce Commission. (Docket Entry No. 19, Ex. 2). In the charge, Brown alleged that Wyndham "specifically targeted me and other older workers in an effort to force us to quit, citing as an example that he was the only manager not allowed an assistant. (*Id.*). He alleged that he complained about being targeted for adverse treatment because of his age. (*Id.*). Brown also alleged in the charge that when he returned from work after medical leave, Wyndham engaged in a deliberate campaign against him, in retaliation for taking leave, as well as for complaining about age discrimination, to force him and other older workers to quit. (*Id.* at 1-2).

The charge described actions Wyndham took after Brown's return from medical leave. They include the following:

- Wyndham unfairly criticized his performance and threatened his continued employment;
- Wyndham criticized him for taking medical leave;
- Wyndham forced him to work 20 days in a row;

2

- Wyndham required him to do too many tasks; and

- Wyndham scrutinized his and other employees' work more closely than that of other, younger employees, and more closely than before he took medical leave.

(*Id.*). Brown concluded the charge by alleging that he was "subjected to disparate treatment by my employer in violation of Title VII . . . and . . .the Texas Labor Code due to my age (49) and my race (African-American) and have been unlawfully retaliated against since voicing my complaint of age discrimination to my management team." (*Id.* at 2). The charge did not allege that a Wyndham employment practice or policy had a disparate impact on him and other older employees.

In response to Brown's charge, the EEOC investigated the allegations and theories he asserted. (Docket Entry No. 19, Ex. 3). The EEOC's investigation largely consisted of reviewing communications between Brown and Wyndham about Brown's job performance. (*Id.* at 1-6). The EEOC described Brown's discrimination theory as "[d]isparate treatment" and noted that Brown believed he was retaliated against for complaining of discrimination and that "older Individuals who were employed by [Intercontinental] and currently employed by Wyndham were being targeted because of age, but provided no specificity." (*Id.* at 1-3). There is no indication that the EEOC investigation included interviewing other older Wyndham employees about the impact of any particular Wyndham employment practice or questioning Wyndham about a particular employment practice. Instead, the EEOC limited the investigation to how Wyndham treated Brown.

Brown initially sued in state court, asserting state-law claims for age discrimination based on disparate treatment and retaliation for complaining of discrimination, as well as a claim for "discriminatory and retaliatory treatment . . . based on his request for medical leave and his actual medical leave under the FMLA." (Docket Entry No. 1, Ex. 3 at ¶¶ 30, 35). Wyndham timely

3

removed based on federal-question jurisdiction. (Docket Entry No. 1). Brown filed an amended complaint asserting the same factual and legal allegations as in his state court petition. (Docket Entry No. 14). Brown now moves for leave to amend his complaint again. (Docket Entry No. 18). His motion attaches his proposed amended complaint, which adds the following allegations:

> Mr. Brown, however, was not the only employee impacted by the Defendant's practices after its acquisition of [Intercontinental]. Rather, other former-[Intercontinental] employees who had enjoyed 10+ years of successful employment, like Mr. Brown, also complained of Defendant's negative conduct specifically geared toward them.
>
> That is, Defendant engaged in a process and/or practice of aggressively evaluating and disciplining former-[Intercontinental] employees that resulted in disparate impact on the basis of age. Defendant's undisciplined system of subjective decision-making had the same effects as a system pervaded by impermissible intentional discrimination.

(Docket Entry No. 18, Ex. A at ¶¶ 27, 28). The proposed amended complaint again asserts state statutory claims for intentional age discrimination and adds disparate-impact discrimination. (*Id.* at ¶ 37).

Wyndham opposes Brown's motion, arguing that amendment would be futile because the proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss. (Docket Entry No. 19). Wyndham argues that Brown did not exhaust his administrative remedies because he did not assert a disparate-impact claim in the charge he filed with the federal and state agencies, and that he has failed to sufficiently plead a disparate-impact claim because the proposed amended complaint does not identify an employment practice or policy that is facially neutral but discriminatory in impact. (*Id.* at 9-10).

Under Rule 15(a), a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]he language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal

quotation marks omitted). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Id.* (internal quotation marks omitted). "[I]f a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (quoting 6 CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE, § 1489 (2d ed.1990)).

Both exhaustion and pleading sufficiency are addressed below.

## II. Exhaustion of Administrative Remedies

Claims brought under the Texas Commission on Human Rights Act, as under the federal Age Discrimination in Employment Act, must first be presented to the state and federal agencies. *Prairie View A&M Univ.v. Chatha*, 381 S.W.3d 500, 517 (Tex. 2012). The lawsuit allegations must fall within the scope of the administrative charge. *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006). District courts are to "construe[] an EEOC complaint broadly but in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (internal quotation marks omitted); *see also Pacheco*, 448 F.3d at 791. In doing so, a court is not confined to the four corners of the charge. A subsequent lawsuit "may include allegations like or related to allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission." *McClain*, 519 F.3d at 273 (internal quotation marks and alterations omitted).

In *Pacheco*, the FAA did not promote a Hispanic air traffic controller, instead promoting someone outside the protected class. The FAA used a recently implemented evaluation system that

5

assessed an applicant on 23 different criteria. *Pacheco*, 448 F.3d at 786. Mr. Pacheco filed an administrative complaint with the Department of Transportation's Equal Opportunity Office, alleging that "[o]nce again, the 'good old boy' was selected [for promotion to a supervisor's job] even though I was more qualified having been in the agency since 1978. This being my seventh facility (my third level 4 facility)." *Id.* at 791. The Equal Opportunity Office notified Mr. Pacheco that it would investigate "[w]hether the FAA treated you differently, based on your national origin (Hispanic), when you were not selected for a supervisor's job," and told him to contact the Equal Opportunity Office if he objected to this description of his claim. *Id.* at 786.

Mr. Pacheco received a right-to-sue letter and filed suit. He asserted both disparate-treatment and disparate-impact claims. *Id.* The District Court dismissed the disparate-impact claim for failure to exhaust. The Fifth Circuit affirmed, holding that Mr. Pacheco had not exhausted his administrative remedies for a disparate-impact claim because "a disparate-impact investigation could not reasonably have been expected to grow out of [the Equal Opportunity Office] charge." *Id.* at 792. The court noted that unlike a disparate-treatment claim, which focuses on the employer's intent to target the plaintiff for disparate treatment, a disparate-impact claim requires a: "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." *Id.* at 791. Mr. Pacheco's administrative charge "(1) . . . facially alleged disparate treatment; (2) . . . identified no neutral employment policy; and (3) . . . complained of past incidents of disparate treatment only." *Id.* at 792.

Similarly, a disparate-impact investigation could not reasonably be expected to grow out of the allegations in Brown's agency charge. As in *Pacheco*, Brown's charge alleged only disparate treatment. As in *Pacheco*, Brown's charge did not identify a facially neutral and generally

6

applicable employment policy, instead focusing on the defendant's allegedly intentional targeting of the plaintiff and others because of their protected trait. In both *Pacheco* and in this case, the agency investigated only disparate treatment.

Allowing the proposed amendment would be futile because Brown has not administratively exhausted his disparate-impact claim. Although exhaustion of administrative remedies for a claim under the Texas act is not jurisdictional, the filing deadline serves as a limitations bar. *See Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 169 (5th Cir. 2014); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010); TEX. LABOR CODE § 21.202(a) ("A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred."). Further amendment to add a disparate-impact claim would be futile because the claim is time-barred unless the amendment relates back or the time bar is tolled.

"[G]enerally, amendments that raise a new legal theory do not relate back to an original charge of discrimination." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003). Amendment to add a new legal theory is allowed only if "the facts supporting both the amendment and the original charge are essentially the same." *Id.* at 879; *see also Univ. of Texas v. Poindexter*, 306 S.W.3d 798, 809 (Tex. App.—Austin 2009, no pet.) (amendment to add retaliation theory did not relate back to charge asserting disparate-treatment theory). Disparate-impact discrimination is a separate legal theory from disparate treatment and requires separate factual allegations. *See Pacheco*, 448 F.3d at 791-92 (contrasting disparate-impact and disparate-treatment claims). Any amended charge would need to allege for the first time that Wyndham had a facially neutral employment practice or policy that had a disparate impact on older employees. *Id.* These are new facts that would fall outside the scope of the facts alleged in the original charge. *See Manning*, 332

7

F.3d at 879 ("[T]he facts supporting both the amendment and the original charge [must be] essentially the same").

Nor is equitable estoppel appropriate as a basis to toll limitations. "Courts have typically extended equitable tolling where 'the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period . . . .'" *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & nn. 3-4, (1990)). "In other words, equitable tolling may apply where the claimant has vigorously pursued his action, but has inadvertently missed deadlines due to his or her lack of sophistication with the procedural requirements" of discrimination claims. *Rowe v. Sullivan*, 967 F.2d 186, 192 (5th Cir. 1992). There is no evidence that Brown's failure to plead disparate impact earlier was due to his lack of knowledge about the procedural rules or the federal or state substantive statutory requirements. Brown was represented by counsel in the EEOC investigation that followed his charge and in this litigation. (Docket Entry No. 19 Ex. 4). Brown's EEOC charge identified a specific theory of discrimination, but not disparate impact. There is no basis to infer that this failure was due to an "extraordinary circumstance." *See Crostley v. Lamar Cty.*, 717 F.3d 410, 419 (5th Cir. 2013).

Brown has not alleged new facts in his proposed amended complaint that explain his failure to assert the disparate-impact claim earlier. There is no basis to apply equitable estoppel.

### III.    Pleading a Facially Neutral Policy

Even assuming that Brown has exhausted his administrative remedies, the proposed amendment would still be futile because it does not identify a facially neutral employment policy or practice that applied generally but had a disparate impact on older employees.

To state a disparate-impact claim, a party must identify a "a facially neutral policy . . . that,

in fact, has a disproportionately adverse effect on a protected class." *Id.* at 792. "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis in original) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)). A plaintiff filing this claim must "identif[y] [a] specific test, requirement, or practice within [an employment policy] that has an adverse impact on older workers." *Smith*, 544 U.S. at 241.

A system for evaluating employees is an employment practice that can form the basis of a disparate-impact, age-discrimination claim. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) (analyzing the alleged disparate impact of a promotion system); *Smith*, 544 U.S. at 233 (analyzing the alleged disparate impact of an employee raise system). Brown proposes to allege that Wyndham "engaged in a process and/or practice of aggressively evaluating and disciplining former-[Intercontinental] employees that resulted in disparate impact on the basis of age. Defendant's undisciplined system of subjective decision-making had the same effects as a system pervaded by impermissible intentional discrimination." (Docket Entry No. 18, Ex. A at ¶ 28). Construing this allegation in the proposed amendment in the light most favorable to Brown, it alleges that Wyndham had a practice of evaluating former-Intercontinental employees that had a disparate impact on these older employees because it was overly aggressive, undisciplined, and subjective. This allegation falls short of what *Smith* and other cases require.

It is not enough to label a system for evaluating employee performance as "subjective" or "aggressive" without explaining how the system operates and what makes it discriminatory in impact.

9

*See Smith* 544 U.S. at 241 (a plaintiff must identify the "specific test, requirement, or practice within" the challenged pay practice). *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002) ("Plaintiffs generally cannot attack an overall decisionmaking process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact."). The requirement to identify the factors in an employee evaluation system is particularly important in age-discrimination cases, as opposed to disparate-impact claims based on other forms of discrimination, because liability is "expressly exempt[ed] . . . for acts 'based on reasonable factors other than age.'" *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 256 (D. Mass. 2008) (quoting *Smith*, 544 U.S. at 241).

The facts of *Combs v. Grand Victoria Casino & Resort*, No. 1:08CV00414RLYJMS, 2008 WL 4452460, at *2 (S.D. Ind. Sept. 30, 2008), are instructive. In *Combs*, a group of employees asserted disparate-impact age-discrimination claims against their employer. *Combs*, 2008 WL 4452460, at *1-2. The employees described the challenged employment practice as: "unreasonable and arbitrary methods and subjective practices of investigation and decision making concerning (a) terminations; (b) alleged rule and policy violation; (c) alleged employee misconduct; and (d) disciplinary procedures." *Id.* at *2. The court held that this allegation in the plaintiff's complaint failed to identify "a specific employment practice to support their disparate-impact claims" because "vague claims of subjective decision-making cannot be considered a 'specific test, requirement, or practice.'" *Id.* at *3 (quoting *Smith,* 544 U.S. at 241).

In *Cefalu v. Tangipahoa Par. Sch. Bd.*, No. CIV.A. 12-1380, 2013 WL 5329808, at *1-2 (E.D. La. Sept. 20, 2013), a teacher alleged that a school district's system of evaluating teachers for reassignment had a disparate impact on older employees. The teacher argued that she had met her

10

burden to identif[y] a specific employment practice because she alleged that "the evaluation process was 'subjective,' . . . members of the evaluation team were younger than Plaintiff, and . . . the evaluation team did not receive training to avoid age discrimination." *Cefalu*, 2013 WL 5329808, at *7. The court held that these allegations were insufficient because they were either generalized employment practices or not employment practices at all. *Id.* at *7. The court noted that "[p]laintiff has not alleged that any stage of the two-score [evaluation] (awarding one score based on the interview and the other based on an objective rubric, and then adding the two scores together) was specifically responsible for creating a disparate impact by age." *Id.* at *8.

Brown's proposed amended complaint does little more than assign descriptive labels to Wyndham's employee performance evaluation system. Brown describes the system as "aggressive[]," "undisciplined," and "subjective," but he does not explain how the system applies generally and is facially neutral, but has a disparate impact on older employees. To the contrary, Brown alleges that older employees were intentionally targeted for harsher performance scrutiny than younger employees. Brown's proposed disparate-impact claims are broader and more vague than those found deficient in *Combs* and *Cefalu*. In *Combs*, the complaint specified that the plaintiffs challenged the evaluation systems for: "(a) terminations; (b) alleged rule and policy violation; (c) alleged employee misconduct; and (d) disciplinary procedures, " as "unreasonable," "arbitrary," and "subjective." *Combs*, 2008 WL 4452460, at *2. In *Cefalu,* the plaintiff challenged the evaluation system for reassignments as "subjective." *Cefalu*, 2013 WL 5329808, at *1-2. Brown describes the practices he challenges even more broadly and vaguely, challenging Wyndham's general "decision making process" and the "evaluating . . . and disciplining" of employees. (Docket Entry No. 18, Ex. A at ¶ 28). Brown's description of the system as "subjective," "aggressive," and "undisciplined" is

11

similar to the descriptions rejected as inadequate in both *Combs* and *Cefalu*.

Brown's proposed amended complaint, his third version, does not adequately allege a disparate-impact claim. Allowing another opportunity to amend would be futile for this reason as well.

## IV.     Conclusion

Brown's motion to amend his complaint, (Docket Entry No. 18), is denied.

SIGNED on May 5, 2016, at Houston, Texas.

                                                                                      _____
                                                                                           Lee H. Rosenthal
                                                                                      United States District Judge